UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NANETTE MONTGOMERY,

        Plaintiff,

v.                                                          Case No.  8:19-cv-2288-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.
_____/

## **ORDER**

Plaintiff seeks judicial review of the denial of her claim for social security disability ("SSD") benefits.  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

### **A.    Procedural Background**

Plaintiff filed an application for SSD benefits (Tr. 342-43).  The Commissioner denied Plaintiff's claim both initially and upon reconsideration (Tr. 109, 123). Plaintiff then requested an administrative hearing (Tr. 168-69).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 128, 141).  Following the hearing, the ALJ issued a partially favorable decision that Plaintiff was not disabled prior to June 29, 2017 but became disabled on that date (Tr. 124-45).  Plaintiff requested administrative review of the ALJ's partially

favorable decision (Tr. 231-32), which resulted in the Appeals Council vacating the ALJ's first decision and remanding the case to the ALJ for consideration of Plaintiff's past relevant work as an office helper (Tr. 148-52).  The ALJ held a second hearing where Plaintiff appeared and testified (Tr. 68-96).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled from the time of her onset date through December 31, 2017, her date last insured (Tr. 11).  Specifically, the ALJ found that given Plaintiff's residual functional capacity for a reduced range of light work, she could perform her past relevant work as an office helper and was not disabled under the Social Security Administration's ("SSA") rules (Tr. 25).  Plaintiff requested review of the ALJ's decision from the Appeals Council (Tr. 338-41), which was denied (Tr. 1).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1962 (Tr. 110), claimed disability beginning on October 18, 2014 (Tr. 111).  Plaintiff obtained a high school education (Tr. 120, 377).  Plaintiff's past relevant work includes experience as a tractor/trailer truck driver and as an office helper (Tr. 23, 347-48).  Plaintiff alleged disability due to mental and physical impairments including herniated disks, hip problems, neuropathy, diabetes, high blood pressure, fibromyalgia, and depression (Tr. 109, 123).

In rendering the administrative decision, the ALJ concluded that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of October 18, 2014 through her date last insured of December 31, 2017 (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disk disease, dysfunction of a major joint, hypertension, diabetes mellitus, obesity, neuropathy, and cavus foot (high arch) (Tr. 13). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), except that Plaintiff needed a sit/stand option, meaning the ability to change positions between sitting and standing every 30 minutes; could no more than occasionally push/pull with the bilateral lower extremities; could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, but never crawl or climb ladders, ropes, or scaffolds; could occasionally reach overhead with the bilateral upper extremities, but frequently reach in all other directions; could frequently handle and finger with the bilateral upper extremities; and could no more than occasionally tolerate exposure to extreme temperatures of heat or cold and work place hazards, such as unprotected heights and moving machinery (Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the

presence of underlying impairments that reasonably could be expected to produce some of the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully supported due to inconsistencies with her symptoms and the medical evidence and other evidence (Tr. 16).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could perform her past relevant work as an office clerk, but not her past relevant work as a tractor/trailer driver (Tr. 23-27). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled from the time Plaintiff alleged disability until the date last insured (Tr. 11).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is

disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims.  *See* 20 C.F.R. §§ 404.1501, *et seq.*  These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity.  In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled.  These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the

grids." 20 C.F.R. Part 404, Subpart P, App. 2.  If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled.  20 C.F.R. §§ 404.1569, 416.969.  If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only.  20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the

Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*).

## III.

Plaintiff argues that the ALJ erred in three ways: (1) by determining that Plaintiff's activities for T&M Electrical constitute past relevant work; (2) by rejecting Plaintiff's treating psychiatrist's opinion about Plaintiff's work limitations; and (3) by not considering all of Plaintiff's impairments.  For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A.   Past Relevant Work

First, Plaintiff contends that the ALJ erred in determining that Plaintiff's prior job as a clerical helper for T&M Electrical constitutes past relevant work as it pertains to step four of the sequential evaluation process.  The ALJ concluded that Plaintiff's prior job as a clerical helper qualifies as past relevant work.  Furthermore, based on the VE's testimony, the ALJ concluded that Plaintiff could have performed past relevant work as an officer helper and thus, was not disabled.  For the following reasons, the ALJ's finding is supported by substantial evidence.

For a job to be considered past relevant work, it must be performed at the level of substantial gainful activity ("SGA").  Past relevant work is work that the claimant has done within the past 15 years, that was SGA, and that lasted long

enough for her to learn to do it. 20 C.F.R. § 404.1560(b)(1).  Here, the past relevant work was done within the last 15 years and lasted for approximately 9.5 months.  There is no dispute as to whether 9.5 months is long enough for Plaintiff to learn how to perform the role of a clerical helper.  Therefore, the issue is whether that role constitutes SGA.

Plaintiff contends that her prior job as a clerical helper does not constitute SGA.  "In evaluating work activity for [SGA] purposes where the claimant was an employee in the past, the chief consideration is the claimant's earnings from the work activity." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 524 (11th Cir. 2014) (citing 20 C.F.R. § 404.1574(a)(1)).  The ALJ ordinarily will consider that the claimant either was or was not engaged in SGA if her average monthly earnings are above or below a certain amount established by the Social Security Administration's earnings guidelines. *Eyre*, 586 F. App'x at 524; 20 C.F.R. § 404.1574(b)(2)-(3).  "If a claimant receives wages exceeding those set out in an earnings guidelines table, a presumption arises that she was engaged in substantial gainful activity during that period." *Chacon v. Saul*, No. 19-cv-2371-T-TGW, 2020 WL 6624927, at *3 (M.D. Fla. Nov. 12, 2020).

Here, the record indicates that Plaintiff earned enough money as a clerical helper to ordinarily be considered SGA (Tr. 357).  The regulations provide that if an individual worked and earned $1,070 per month in 2014, then she was engaging in SGA.  In this instance, the ALJ found that, based on substantial evidence in the record, Plaintiff's pay exceeded that threshold (Tr. 23).  Specifically, the claimant's

"Detailed Earnings Query" dated September 26, 2018 shows that the claimant was paid $10,800 in 2014 for clerical work performed at T&M Electrical over a period of approximately 9.5 months (Tr. 357). Thus, Plaintiff's earnings during that 9.5 month period amount to $1,136 per month, which exceeds the amount established as SGA by the regulations. Moreover, in Plaintiff's work history report (Tr. 387-98) ("Work History Report"), she states that she received weekly pay of $850.00 during her employment at T&M Electrical (Tr. 390).

In response, Plaintiff contends that the ALJ was mistaken in relying on her Work History Report (Tr. 24). Plaintiff attempts to discount the credibility of the Work History Report by contending that the questions in the form do not make sense, that she was confused in filling out the form, and that her answers were not all accurate (Doc. 16). For example, Plaintiff states when she claimed that she worked five days per week, she actually meant that she was only "available to work 5 days a week, but did not remember how many days she worked" (Doc. 16)[1]. Plaintiff also states that she believes she only received a paycheck for insurance

---

[1] Plaintiff contends that if you add up the hours per day that she states she performed each function (i.e. walk, stand, sit, climb, stoop), that this number adds up to 17-18 hours per day, and that it is not realistic that she would have worked such long hours. However, one unmentioned, plausible explanation is that in being asked the number of hours Plaintiff performed each function, she stated the maximum number that she would do each function on any given day and did not intend for the figures to be added together. To illustrate this thought more clearly, the following example is useful. Rather than Plaintiff saying that in one day she walked for five to six hours, stood for four hours, sat for eight hours, climbed for one hour and also stooped for one hour, Plaintiff may have logically understood and intended for her answer to convey that the most time she would walk in any given work day was five to six hours; the most time she would stand in any given work day was four hours; the most time she would sit in any given work day was eight hours; etc. Plaintiff's attempt to imply that because the figures add up to 17-18 hours in a day, the answers must not be accurate, is untenable and appears to ignore the logical rationale for Plaintiff's responses.

purposes.  Plaintiff further points to her Disability Report (Tr. 375-384) where she indicates that she was paid $10/hour for two hours per day, one day per week, while employed as a bookkeeper at T&M Electrical (Tr. 377).   However, the ALJ previously considered these arguments in making the determination that Plaintiff failed to meet her burden of demonstrating that she did not engage in SGA (Tr. 26). In doing so, the ALJ recognized the probative value of the Work History Report and found Plaintiff's contentions to be unsubstantiated.   Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff's work as a clerical helper constitutes SGA.

Moreover, Plaintiff contends that her work as an office helper for T&M Electrical was done under "special conditions" pursuant to 20 C.F.R. § 404.1573(c), such that the work should not be considered SGA.  Plaintiff argues that since she worked for a family company, her husband was the owner, and she worked irregular hours and at lower productivity standards, the "special conditions" exception should prevent a finding of SGA.  However, the ALJ thoroughly considered this argument and noted that 20 C.F.R. § 1404.1573(c) also indicates that "work done under special conditions may show that you have the necessary skills and ability to work at the [SGA] level" (Tr. 24).  Moreover, the ALJ noted that under 20 C.F.R. 404.1572, work activity may be substantial even if done on a part-time basis and may be gainful if it is the kind of work usually done for pay or profit, regardless of whether or not a profit is realized. (Tr. 24).  Significantly, the ALJ considered the very arguments before this court, as Plaintiff essentially repeats the arguments she

made, through counsel, to the Appeals Council and to the ALJ at the second hearing

(Tr. 23-24, 72-73, 93, 468-70).  The ALJ detailed her findings by stating that:

> [s]imply, I am convinced that the claimant was paid for more than two (2) hours of work weekly. I am equally convinced that she did more than training for accounting software she claims to have never grasped. I am hardly persuaded to ignore the probative value of Exhibit 4E because she needed to "just put something down," particularly given the timing of the testimony vis-a-vis the submission of Exhibit 4E into the record. Nor do I find that her daughter completed the form without discussing the subject matter with the claimant. I find it curious that claimant's husband would pay for payroll services for only two employees, yet continue to perform bookkeeping manually because claimant could not learn Quick[B]ooks. I find it doubtful that claimant would be paid over $100.00 hourly for 95 hours of work over those 9.5 months, assuming 5 weeks in each month, especially when she was "underperforming," to characterize her testimony at the remand hearing. I am not persuaded that she was simply paid a wage for purposes of worker's compensation insurance, when, to characterize her testimony on the work, she was hardly working. In short, these would be imprudent business decisions, and while I do make room for subsidized and charitable work in family owned and even publicly held businesses, there generally is *some* reasonableness with respect to those business decisions, which is absent on these facts. In conclusion, I do not find that she was subsidized or offered accommodation because she worked in the "family business." I do speculate whether she was compensated as an officer of the company, but I need not address whether there was work activity in 2012 and 2013 that was not flowed through to the earnings queries because of some corporate tax filing exceptions, because the earnings in 2014 are sufficient for purposes of satisfying whether the claimant had past relevant work as an office helper.

(Tr. 25-26).

As noted above, in reviewing the Commissioner's decision, the court may

not re-weigh the evidence or substitute its own judgment for that of the ALJ.

Rather, the issue is whether substantial evidence supports the ALJ's findings.  Here,

substantial evidence supports the ALJ's determination that Plaintiff's prior job as a clerical helper constitutes past relevant work, as the ALJ relied upon Plaintiff's 2014 earnings statement in the record, along with Plaintiff's own statements in the Work History Report.  Although Plaintiff disputes the ALJ's findings and suggests another plausible explanation for the financial records and her statements in the Work History Report, the ALJ's findings are equally plausible and are grounded on the evidence of record.  Therefore, the ALJ's determination that Plaintiff's activities for T&M Electrical constitute past relevant work is not in error, as it is supported by substantial evidence in the record.

### B.    Dr. Bolaram's medical opinion

Plaintiff next contends that the ALJ erred by rejecting Plaintiff's treating psychiatrist's opinion about Plaintiff's work limitations.  The ALJ determined that Dr. Bolaram's opinion warranted little evidentiary weight because (1) the ALJ found that Dr. Bolaram's treating notes did not support Plaintiff's extreme limitations that Dr. Bolaram later indicated; and (2) Dr. Bolaram indicated that Plaintiff had markedly severe limitations for 3-5 years, which included Plaintiff's work that the ALJ concluded rose to the level of SGA.  The ALJ also considered Plaintiff's significant plans to move in with her daughter and to sell her house, which the ALJ stated are major life events which demand significant concentration, persistence, and pace.  For the following reasons, the ALJ's finding is supported by substantial evidence.

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more evidence a medical source presents to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error.

*MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted).   Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.   *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).   In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion.   *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

Here, it is uncontested that Dr. Bolaram is a treating psychiatrist.   Therefore, the sole issue before this Court is whether the ALJ had good cause for giving Dr. Bolaram's opinion little evidentiary weight.   On April 16, 2015, Plaintiff made her initial visit to Dr. Bolaram (Tr. 631-34).   She reported that she was suffering from depressed mood, anxiety, lack of attention, sleep issues and chronic pain following the loss of her husband that occurred approximately six months prior (Tr. 632). Plaintiff continued to visit Dr. Bolaram in the following months, making a total of at least six visits through September 2015.   Plaintiff then stopped visiting Dr. Bolaram.

Plaintiff's next visits to Dr. Bolaram were not until March 28, 2017 and March 29, 2017, nearly eighteen months after her last visit (Tr. 840-43).   During Plaintiff's March 29, 2017 visit, Dr. Bolaram completed a mental residual functional capacity questionnaire form that asked questions about Plaintiff's functioning abilities as it relates to certain activities (Tr. 840-41).   The questionnaire asked Dr.

Bolaram to check either "none or slight," "moderate," "severe," or "markedly severe" for each question.  Dr. Bolaram checked "markedly severe" for every single activity on the questionnaire.  Dr. Bolaram added that Plaintiff had suffered these markedly severe limitations for three to five years prior.  After considering Dr. Bolaram's opinion, the ALJ afforded it little weight (Tr. 21).  For the following reasons, good cause supports the ALJ's decision.

First, as noted by the ALJ, Dr. Bolaram's findings are inconsistent with the record.  The ALJ stated that neither the treatment notes from April 2015 to September 2015 nor the treatment notes from March 28, 2017 support the extreme limitations indicated by Dr. Bolaram (Tr. 21).  In the treatment notes from Plaintiff's visits between April and September of 2015, Dr. Bolaram stated that Plaintiff's appearance was normal, she was oriented to time, place, and person, her thought process was goal directed and normal, and her insight/judgment was good (Tr. 623-31; 707-10).  Although Dr. Bolaram at times noted slow speech and anxious mood, Plaintiff's affect was consistently full range, her thought process was goal oriented, her insight and judgment were good, and there were no signs of psychosis (Tr. 625, 627, 629, 633, 708, 711, 714). As the ALJ stated, through September 2015, Dr. Bolaram noted "*some* depressed and anxious moods, but the results of the mental status examinations remained generally normal otherwise (Exhibits 4F and 7F)" (Tr. 21, 623-34, 707-16). Dr. Bolaram diagnosed Plaintiff with severe depression, generalized anxiety, and attention deficit disorder with childhood hyperactivity, and prescribed different levels of Wellbutrin, metformin, lisinopril, and adderall (Tr.

623-31).   Then approximately 18 months later, during the March 28th visit, Dr. Bolaram again noted that Plaintiff's appearance was normal and appropriate, her thought process was goal oriented and normal, her memory problems were mild, and her insight/judgment was good (Tr. 842).

These findings directly conflict with Dr. Bolaram's March 29, 2017 report wherein he opined that Plaintiff's symptoms were markedly severe in every category.  For example, when asked in the questionnaire about Plaintiff's ability to set realistic goals, Dr. Bolaram checked markedly severe, yet Dr. Bolaram previously indicated in every single visit that Plaintiff's thought process was goal directed.  Dr. Bolaram's own treatment notes simply do not support that Plaintiff's symptoms are as extreme as Dr. Bolaram opined in the March 29, 2017 report.

Additionally, the ALJ explained that she gave little weight to Dr. Bolaram's opinion because Dr. Bolaram indicated that Plaintiff had markedly severe limitations for three to five years prior.  Notably, Dr. Bolaram's treatment notes are silent as to why if Plaintiff's limitations were so severe, no treatment was sought or proscribed during an 18-month period from September 2015 until March 2017.  The ALJ determined that Dr. Bolaram's opinion that Plaintiff had such severe limitations for three to five years not only inconsistent with the records from Plaintiff's 2015 visits with Dr. Bolaram, but also inconsistent with the ALJ's finding that Plaintiff engaged in SGA in 2014.  For the reasons discussed in Section A, *supra*, the undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff engaged in SGA during her employment as a clerical helper.

Since the ALJ's decision that Dr. Bolaram's opinion was inconsistent with the mental status examinations and inconsistent with Plaintiff's ability to work in 2014 (Tr. 21) is supported by substantial evidence, the ALJ's decision to give little weight to Dr. Bolaram's opinion must not be disturbed. The undersigned finds that the ALJ demonstrated good cause for discounting Dr. Bolaram's opinion and articulated specific justifications for doing so.

### C.    Consideration of Plaintiff's impairments

Third, Plaintiff contends that the ALJ erred by not considering all of Plaintiff's impairments. Specifically, Plaintiff contends that the ALJ made no mention of Plaintiff's foot and ankle problems and further, that the ALJ did not mention such impairments in her decision as either severe or non-severe impairments (Doc. 16 at Pg. 33-34). In determining the claimant's RFC, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1560(b); 20 C.F.R. § 404.1565.

In the Eleventh Circuit, an ALJ's statement that she has considered the combined effect of a claimant's impairments at step three is sufficient to establish that the ALJ considered the impairments in combination throughout the sequential evaluation. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Scott v. Colvin*, 652 F. App'x 778, 781 (11th Cir. 2016) (citing *Wilson*, 284 F.3d at 1224-25; *Jones*, 941 F.2d at 1533); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (same). In *Tuggerson-Brown*, the Eleventh Circuit noted that, where

the ALJ stated that he evaluated whether the plaintiff had an impairment or combination of impairments that met a listing and that he considered all symptoms in determining the RFC, such statements were enough to demonstrate that the ALJ considered all the necessary evidence. *Id.* at 952 (citation omitted).  Here, the ALJ explicitly stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (Tr. 15).  This statement alone is sufficient to demonstrate that the ALJ considered the impairments in combination throughout the sequential evaluation.

Further, even if such impairments were not considered as a severe impairment at step two of the sequential evaluation, such error is harmless.  The finding of *any* severe impairment, whether it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (*per curiam*) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied"); *see Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (*per curiam*) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two, and additionally

noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe).

Although an ALJ need not determine whether every alleged impairment is "severe" at step two, the ALJ must consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation.  Here, the ALJ stated at step two that Plaintiff's severe impairments include diabetes mellitus and cavus foot (Tr. 13).  The ALJ also stated that Plaintiff's severe impairments include degenerative disc disease, dysfunction of a major joint, hypertension, obesity, and neuropathy.  The ALJ expressly noted in her decision that at the April 2017 hearing, Plaintiff testified to burning and tingling sensations in her feet (Tr. 16).  Plaintiff also testified that one of her doctors attributed those symptoms to her diabetes (Tr. 51), which, as mentioned, the ALJ found to be a severe impairment (Tr. 13).  This is sufficient for the undersigned to conclude that the ALJ considered Plaintiff's foot impairments at step two of the sequential evaluation.  However, regardless of this conclusion, even if the ALJ failed to consider Plaintiff's foot impairments at step two, such error would be harmless since, contrary to the Plaintiff's assertion that the ALJ made "no mention of [her] well documented problems with her feet and ankles" (Doc. 16 at Pg. 33) the ALJ undoubtedly considered Plaintiff's foot impairments in the latter steps of the sequential evaluation.

The ALJ recognized that Plaintiff indicated that she could not stand or walk for long period of time because of severe pain and further, that Plaintiff testified that

she has burning and tingling sensations in her hands and feet (Tr. 16).  The ALJ considered Plaintiff's contention that she could not walk for more than ten to fifteen minutes and stand for no more than ten minutes, but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record through the date last insured (Tr. 16).  Further, the ALJ expressly mentioned that on December 24, 2014, the results of Plaintiff's podiatric examination revealed that she had crepitus effusion of the bilateral feet.  The ALJ also noted however, that at Plaintiff's March 11, 2015 appointment with Dr. Roger Arumugan, Plaintiff was able to walk into the office and mount the examining table without any assistance (Tr. 18).  After considering these impairments, Plaintiff's credible work-related limitations, and after giving "generous consideration to the [Plaintiff's] subjective complaints," the ALJ limited Plaintiff to light work activity with the need for a sit stand option, meaning that Plaintiff must have the option to change positions between sitting and standing for every thirty minutes (Tr. 15, 19).  This RFC accounts for Plaintiff's podiatric limitations.

For all of these reasons, substantial evidence supports a finding that the ALJ's RFC accounts for Plaintiff's credible work-related limitations from all of her impairments, including her foot issues, which the record shows are linked to her diabetes (Tr. 15, 51).  Therefore, the undersigned finds that the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.  As such, remand is unwarranted.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is affirmed.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 29th day of March, 2021.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record